**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION**

**MARKEY VALDEZ CRUSE,**

**Plaintiff,**

**vs.** **Case No. 4:20cv466-AW-MAF**

**OFFICER ERIC PAYNE,**

**Defendant.**

**_______________________________/**

# REPORT AND RECOMMENDATION

Plaintiff, proceeding pro se, filed a civil rights complaint on September 28, 2020, against Defendant Payne, a deputy sheriff employed by the Leon County Sheriff's Office, alleging that Defendant violated Plaintiff's Fourth Amendment rights during a traffic stop which culminated in Plaintiff's arrest. ECF No. 1. Defendant was served with the complaint and summons, ECF No. 6, and responded by filing an answer with affirmative defenses, ECF No. 7, on October 28, 2020. The parties were provided an opportunity to conduct discovery, ECF No. 8, and the discovery period closed on February 11, 2021. *See* ECF No. 13.

On December 7, 2020, Defendant filed a motion for summary judgment, ECF No. 10, supported by eight (8) exhibits, ECF No. 9. Although the motion was filed only a month after issuance of the Initial Scheduling Order, ruling was deferred and Plaintiff was afforded the full discovery period before setting a deadline for his response to Defendant's motion. ECF No. 13. Plaintiff was then advised of his obligation to file his opposition to the motion, ECF No. 18, and his response, ECF No. 19, was timely filed.

Defendant contends that Plaintiff's false arrest claim is barred by Heck v. Humphrey, 114 S. Ct. 2364 (1994). ECF No. 10 at 9. He also asserts that he had probable cause to initiate the traffic stop. *Id.* at 11. For his part, Plaintiff argues there are "disputed issues of material fact and Deputy Payne's motion for summary judgment should be denied." ECF No. 19 at 9. He further contends that his false arrest claim is not Heck barred. *Id.* at 11. The summary judgment motion is ready for a ruling.

## I. Allegations of the Complaint

Plaintiff alleged that on April 15, 2020, Defendant stopped Plaintiff's vehicle and accused him of failing to stop at a stop sign. ECF No. 1 at 7. Plaintiff contends that Defendant Payne lacked probable cause for the

traffic stop because the stop sign was clearly on the ground." *Id.* Because he lacked probable cause to stop his vehicle, Plaintiff also contends that Defendant "unreasonably searched" his vehicle. *Id.* at 7-8. Ultimately, Defendant arrested Plaintiff for a violation of probation ("being away from his home during his curfew hours") as well as "possession of a controlled substance for drugs allegedly found in the vehicle." *Id.* After 63 days, the controlled substance charge was dropped, Plaintiff was released from the jail and his probation was reinstated. ECF No. 1 at 7-8. Plaintiff seeks compensatory and punitive damages for "false arrest/false imprisonment." ECF No. 1 at 9-10.

## II. Legal standards governing a motion for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The

"party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must then show[1] the court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S. Ct. at 2554.

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). A party must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., LTD. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is

[1] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

insufficient. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).

"Summary judgment is not a time for fact-finding; that task is reserved for trial." Sconiers v. Lockhart, 946 F.3d 1256, 1263 (11th Cir. 2020) (citing Tolan v. Cotton, 572 U.S. 650, 655-57, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014)). Specific facts pled in a sworn complaint and supported by record evidence must be credited to the Plaintiff, and all reasonable inferences must be resolved in the light most favorable to the nonmoving party. Sconiers, 946 F.3d at 1262-63. However, "when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible." 946 F.3d at 1263. On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal quotation marks omitted) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009)). "[A]t the summary judgment stage the judge's function is

not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (quoted in Sears v. Roberts, 922 F.3d 1199, 1205 (11th Cir. 2019)).

**III. Relevant Evidence**

Defendant Payne, a deputy with the Leon County Sheriff's Department, was traveling on West Tennessee Street when he "observed a dark colored passenger car" turn eastbound off of Lukeman Lane onto West Tennessee Street without stopping. ECF No. 9-2 at 2 (Probable Cause Affidavit). Defendant Payne activated the lights on his patrol vehicle and conducted a traffic stop. *Id.* Defendant spoke with Plaintiff, "the driver and sole occupant of the vehicle," who said he did not have any identification on him, but identified himself as Markey Cruse and gave his date of birth. *Id.*

Deputy Payne confirmed Plaintiff's information through the Driver and Vehicle Information Database ("DAVID") and relayed Plaintiff's driver's license number to dispatch. *Id.* Dispatch advised that Plaintiff was on probation, prompting Defendant to search the National Crime Information Center and Florida Crime Information Center ["NCIC/FCIC"]. *Id.*

Defendant confirmed that Plaintiff was on probation supervision with the Florida Department of Corrections until December 15, 2022, for possession of a controlled substance. *Id.* A condition of Plaintiff's probation was "drug offender curfew" which meant he was to "remain in his residence between the hours of 1900 and 0700 (7PM - 7AM)." *Id.*; *see also* ECF No. 9-3 at 3 and 8.

Because the traffic stop occurred at approximately 6:35 a.m., Deputy Payne concluded that he had probable cause to arrest Plaintiff for violating the terms of his probation. ECF No. 9-2 at 2. Defendant Cruse returned to Plaintiff's vehicle, asked him to exit the vehicle, placed him in handcuffs, and read Plaintiff his Miranda Warning. *Id.* Plaintiff agreed to speak with the Defendant without a lawyer, and said that he "left his house to go get gas in his wife's vehicle so he could get an early start to the day." *Id.* Notably, Plaintiff had previously said that he did not have his wallet on him. *Id.* Plaintiff also confirmed that he was on probation and had a 7 p.m. to 7 a.m. curfew. *Id.*

Plaintiff was then placed under arrest for violating the terms of his probation and placed in the rear seat of Defendant Payne's patrol vehicle. *Id.* Defendant called for a tow truck and conducted an inventory search of

Plaintiff's vehicle. *Id.* During the inventory, Deputy Payne saw a plastic grocery bag "hanging from the gear shifter" of the center counsel, on the passenger side of the vehicle. *Id.* Several empty drink cans were inside, as well as a "small plastic coin bag which contained a white substance in a rock form." *Id.* Also inside was "a plastic sandwich bag which contained a white powdery substance." *Id.* Both substances returned a presumptive positive for cocaine when field-tested. *Id.*

Defendant Payne spoke with Plaintiff about the cocaine, who denied ownership, stating that "his wife had someone else in the car the day before and they must have left the Cocaine in the vehicle." ECF No. 9-2 at 2. While waiting for the tow truck, Plaintiff's wife arrived and Plaintiff "allowed his wife to take possession of the vehicle." *Id.*

Because Plaintiff was the "sole occupant of the vehicle" and the substances field tested positive for Cocaine and were within Plaintiff's reach, of where the Cocaine was located," Defendant Cruse also placed Plaintiff under arrest for possession of a controlled substance. *Id.* at 3. He was given only a "verbal warning for failing to stop when he pulled off of Lukeman Lane onto West Tennessee Street and . . . for not having his

driver's license on him while he was operating a motor vehicle." *Id.* Plaintiff was taken to the Leon County Detention Center. *Id.*

An Information was filed in case 20-CF-01069 on May 4, 2020, charging Plaintiff with possession of a controlled substance. ECF No. 9-4. Additionally, an affidavit was submitted in case number 1801187, stating that Plaintiff violated the terms of his probation by failing to comply with curfew and committing a new offense. ECF No. 9-5.

On June 16, 2020, the State of Florida announced a nolle prosequi on the possession of a controlled substance charge. ECF No. 9-6. That same day, Plaintiff admitted to the violation of probation and entered a plea, which was accepted by Circuit Judge James C. Hankinson. ECF No. 9-7. Plaintiff was adjudicated guilty, given credit for 211 days in jail, reinstated to probation and all previous conditions were reimposed. *Id.*; *see also* ECF No. 9-8; ECF No. 9-1 at 30-31.

In Plaintiff's response to Defendant's summary judgment motion, he "admits he did not stop at the intersection." ECF No. 19 at 4. "Plaintiff maintains had a stop sign been present, instead of knocked down, at the

intersection he would have stopped."[2] *Id.* Plaintiff testified in his deposition that he "slowed down" but he "didn't see a stop sign to stop." ECF No. 9-1 at 24. He said that he was traveling at approximately 15 miles an hour when he made the turn. *Id.* at 24-25.

Plaintiff also testified in his deposition that his probation officer had given him authorization to leave before 7:00 a.m. if it was "work related." ECF No. 9-1 at 17. Plaintiff said he told Defendant Payne he was going to put gas in his wife's car and then go to work, and that he could call his probation officer or his "bossman" to verify that he was authorized to be out of the house prior to 7:00 a.m." *Id.* at 30-31. Plaintiff said that another officer asked him why he was wearing shorts, and Plaintiff said, "because I am going to get dressed as soon as I get back, my clothes are already in my room laid out and all I got to do is throw my work clothes on and go to work." *Id.* at 31. He said it only took him "15 minutes to get to work." *Id.*

## IV. Analysis

Plaintiff's complaint asserts that he was "unlawfully searched and seized . . . without probable cause, which resulted in a false arrest/false

---

[2] Plaintiff said that after he was released from the Detention Center on the 16th of December, he noticed that a stop sign had been "put up" at the intersection. ECF No. 9-1 at 24,

imprisonment claim." ECF No. 1 at 6, 9. The claims are considered in chronological order - from the stop to the arrest to the search.

**1. The Stop**

"The Fourth Amendment safeguards '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" Atwater v. City of Lago Vista, 532 U.S. 318, 326, 121 S. Ct. 1536, 1543, 149 L. Ed. 2d 549 (2001). "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." Whren v. United States, 517 U.S. 806, 809–10, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89 (1996) (citations omitted). Because the Fourth Amendment is applicable to automobile stops, and does not prohibit all seizures, the core issue is whether there has been a seizure that is "'unreasonable' under the circumstances." Whren, 517 U.S. at 810, 116 S. Ct. at 1772.

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." 517 U.S. at 810, 116 S. Ct. at 1772. More specifically, law enforcement has probable cause to stop a driver for

violating Florida Statute § 316.123(2)(a),[3] which requires stopping and not "rolling through [a] stop sign." United States v. Allbritton, 758 F. App'x 851, 853-54 (11th Cir. 2019); *see also* United States v. Sims, No. 9:19-CR-80106, 2019 WL 7879878, at *7 (S.D. Fla. Dec. 20, 2019), report and recommendation adopted, No. 19-80106-CR, 2020 WL 611909 (S.D. Fla. Feb. 10, 2020) (stating "[t]he fact that Defendant failed to stop at three different stop signs after he got back into his vehicle and left the RaceTrac gas station only added to Deputy Chahine's probable cause for the traffic stop"). "Thus, the probable cause standard is met when an officer personally observes a traffic infraction." United States v. Brown, 835 F. App'x 551 (11th Cir. 2021).

---

[3] The statute provides:

> Except when directed to proceed by a police officer or traffic control signal, every driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right-of-way to any vehicle which has entered the intersection from another highway or which is approaching so closely on said highway as to constitute an immediate hazard during the time when the driver is moving across or within the intersection."

FLA. STAT. § 316.123(2)(a). Violating that statute "is a noncriminal traffic infraction, punishable as a moving violation as provided in chapter 318." FLA. STAT. § 316.123(4).

Here, Defendant Payne saw Plaintiff turn onto West Tennessee Street without stopping. ECF No. 9-2 at 2. "Plaintiff admits he did not stop at the intersection." ECF No. 19 at 4. He was traveling at about 15 miles per hour when he made the turn at the intersection of Lukeman Lane and Tennessee Street. ECF No. 9-1 at 22-24. His argument is that the stop sign had been knocked down, and if it were "present, . . . he would have stopped." *Id.* That argument, however, is of no benefit to Plaintiff because it has no impact on whether Defendant had probable cause to stop Plaintiff.

The relevant statute, FLA. STAT. § 316.123(2)(a), requires a driver to stop at an intersection with a stop sign at the "stop line," but if there is no line, before entering the crosswalk or, in none, "at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection." That the stop sign was knocked down does not mean it was not a "stop intersection." The statute requires stopping and, because Plaintiff admittedly did not do so, Defendant Payne had probable cause to stop Plaintiff's vehicle.[4]

---

[4] Defendant Payne stated in his motion that he "knew that Lukeman lane had a stop sign requiring traffic to stop before entering West Tennessee Street from experience patrolling this area." ECF No. 10 at 14. "Plaintiff can produce no evidence that Deputy Payne knew that the stop sign was not in place, and therefore, Deputy Payne had probable cause to believe that Plaintiff violated Florida Statute Section

Further, Defendant Payne advises that the fallen stop sign is in another way irrelevant. He points to Florida statute 316.125 which requires Plaintiff to stop at an intersection whether or not there is a stop sign. ECF No. 10 at 14. That statute provides: "The driver of a vehicle emerging from an alley, building, private road or driveway within a business or residence district shall stop the vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across the alley, building entrance, road or driveway, or in the event there is no sidewalk area, shall stop at the point nearest the street to be entered where the driver has a view of approaching traffic thereon and shall yield to all vehicles and pedestrians which are so close thereto as to constitute an immediate hazard." FLA. STAT. § 316.125(2). Defendant advises that "Lukeman Lane is a private road" and "West Tennessee Street is a four-lane highway." ECF No. 10 at 15. Thus, even if the intersection lacked a visible stop sign, Plaintiff was required to stop before making the turn. In light thereof, Defendant Payne also had probable cause to stop Plaintiff's vehicle under that statute.

316.123." *Id.* Those statements are not credited because they are unsupported. Defendant Payne did not submit a declaration or other evidence showing what he "knew."

**2. The Arrest**

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater, 532 U.S. at 354, 121 S. Ct. at 1557. "An arrest is objectively reasonable and there is probable cause where 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Williamson v. Mills, 65 F.3d 155, 158 (11th Cir. 1995). "Probable cause 'does not require convincing proof' that the offense was committed." Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., 956 F.2d 1112, 1120 (11th Cir. 1992) (quoted in Manners v. Cannella, 891 F.3d 959, 968 (11th Cir. 2018)). "It does not require proof beyond a reasonable doubt or even by a preponderance of the evidence." Manners, 891 F.3d at 968.

In this case, Plaintiff's arrest was not due to the traffic infraction but, in the course of confirming Plaintiff's identity,[5] Defendant Payne learned that Plaintiff was on probation with a curfew. Because the traffic stop occurred at 6:35 a.m., during the time of Plaintiff's curfew (7 p.m. to 7 a.m.), Defendant had probable cause to arrest Plaintiff for violating the terms of his probation. *See* Manners, 891 F.3d at 969 (stating that law enforcement may arrest an individual without a warrant "even for a seemingly insignificant crime") (citing Atwater, 532 U.S. at 354, 121 S. Ct. 1536)).

In opposing summary judgment, Plaintiff contends there is a dispute of fact on this issue which precludes summary judgment. ECF No. 19 at 9. He argues that he "had permission to be outside of his residence for work purposes that morning." *Id.* at 13. Plaintiff points out that he "told Deputy Payne he was authorized by his probation officer to be out from his

[5] Plaintiff's identity had to be confirmed because he was in violation of Florida law which requires that "[e]very licensee shall have his or her driver license, which must be fully legible with no portion of such license faded, altered, mutilated, or defaced, in his or her immediate possession at all times when operating a motor vehicle and shall present or submit the same upon the demand of a law enforcement officer or an authorized representative of the department." FLA. STAT. § 322.15(1). That violation "is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318." FLA. STAT. § 322.15(4). Plaintiff admitted he "left his wallet at home." ECF No. 19 at 4.

residence because he was headed to work early." *Id.* at 7-8. He further notes that the judgment entered permitted his curfew to be modified by his probation officer. *Id.* at 13.[6] However, "[t]he Constitution does not guarantee that only the guilty will be arrested." Baker v. McCollan, 443 U.S. 137, 145, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979). The Constitution requires that an arrest be made based on probable cause, but law enforcement are not required "to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense . . . ." Baker, 443 U.S. at 145–46, 99 S. Ct. at 2695. "[A] police officer 'is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) (quoted in Kingsland v. City of Miami, 382 F.3d 1220, 1229 (11th Cir. 2004), abrogated on other grounds by Williams v. Aguirre, 965 F.3d 1147, 1159-60 (11th Cir. 2020)). Accordingly, even though Plaintiff told the Defendant that he had permission to be away from his residence during curfew, Defendant was not required to confirm Plaintiff's assertion with Plaintiff's probation officer before arresting him.

---

[6] Plaintiff's 2018 judgment states: "7p - 7a curfew may be modified by PO for work, school, church or treatment." ECF No. 9-3 at 8.

Moreover, Defendant argues that Plaintiff's false arrest claim is barred by Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). ECF No. 10 at 9. Plaintiff contends that Heck is inapplicable because his success in this action "will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff." ECF No. 19 at 12.

In Heck, the United States Supreme Court held that a civil rights action under § 1983 that necessarily calls into question the validity of a conviction or sentence could not accrue until the plaintiff could demonstrate that the conviction or sentence had been reversed, expunged, or otherwise declared invalid. Heck, 512 U.S. at 487, 114 S.Ct. at 2372. This has been referred to as the "favorable termination" requirement. Uboh v. Reno, 141 F.3d 1000, 1004-06 (11th Cir. 1998). The "favorable-termination requirement is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." Heck, at 484-85, 114 S.Ct. 2364 (explained in McDonough v. Smith, 139 S. Ct. 2149, 2156-57, 204 L. Ed. 2d 506 (2019)). "The requirement likewise avoids allowing collateral attacks on criminal judgments through civil litigation." McDonough, 139 S. Ct. at 2157 (citing Heck, 512 U.S. at 484, 114 S. Ct. 2364).

Plaintiff was arrested by Defendant Payne and "charged with one count of Violation of Probation."[7] ECF No. 9-2 at 3. Plaintiff entered a plea and admitted the violation. ECF No. 9-7 at 1. His "admission [was] entered with the understanding[8] that the state has agreed to" reinstate his probation "with credit for time served of 211 days (as of 6/16/20)." ECF No. 9-8 at 1. The state court judge accepted Plaintiff's plea and "all previous conditions [were] reimposed." ECF No. 9-7 at 1. Because Plaintiff entered a plea and admitted to violating the terms of his probation, he cannot now challenge that he was falsely arrested for that offense. Hoffman v. Beseler, 760 F. App'x 775, 779 (11th Cir. 2019) (relying on Heck, 512 U.S. at 487, 114 S. Ct. 2364, in holding that "a plaintiff cannot bring a § 1983 claim after being convicted of a criminal offense that arises from the same acts that underlie the civil suit"). Plaintiff's false arrest claim is barred by Heck.

---

[7] Plaintiff's probation officer, Lydia H. Ashley, submitted an affidavit of violation of probation which asserted that on April 15, 2020, Plaintiff failed "to remain at his residence between 7 p.m. and 7 a.m. due to a curfew imposed." ECF No. 9-5 at 1. Filing that affidavit suggests that Plaintiff did not have the permission of his probation officer to be driving at 6:35 a.m. on that date.

[8] Additionally, in asking the court to accept his plea, Plaintiff signed the Admission to Violation of Probation" form, doc 9-8 at 2, which includes the following statement: "An admission means I will not challenge the evidence against me and there will be no trial or hearing and no further investigation, discovery, or motions." ECF No. 9-8 at 1.

**3. The Search**[9]

The undisputed evidence in this case reveals that after Plaintiff was placed under arrest for violating the terms of his probation, he was placed in Defendant's patrol vehicle and an inventory search was conducted. ECF No. 9-2 at 2. That search revealed a plastic grocery bag which contained substances which field tested positive for rock and powder cocaine. *Id.*

"The Supreme Court has held that inventory searches of lawfully impounded vehicles are an exception to the general warrant requirement of the Fourth Amendment." Colorado v. Bertine, 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (cited in United States v. Joseph, 611 F. App'x 946, 948 (11th Cir. 2015)); *see also* United States v. McCalla, 286 F. App'x 610, 611 (11th Cir. 2008) ("To uphold a warrantless search under the inventory search doctrine, the police first must have the authority to impound the vehicle and then must follow the procedures outlined in policy") (quoting United States v. Williams, 936 F.2d 1243, 1248 (11th Cir.

[9] Plaintiff did not clearly assert a separate and distinct claim for the search of his vehicle. He did contend that Defendant Payne "unlawfully searched and seized the Plaintiff," ECF No. 1 at 6, but there were no facts presented concerning a search of Plaintiff's person. Considering that Plaintiff's vehicle was searched which led to the discovery of cocaine, the legality of this search has been considered such that Plaintiff's claims have been given a thorough and complete review.

1991)). "For an impoundment of a vehicle to be lawful, it must be done according to an established routine practice and 'on the basis of something other than suspicion of evidence of criminal activity.'" Florida v. Wells, 495 U.S. 1, 4, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990). "Routine, noncriminal practices of securing and inventorying vehicles are 'police caretaking procedures' designed to secure an owner's property while in police custody as well as to protect the police from false claims." United States v. Glover, No. 3:10cr40-MCR, 2010 WL 11526871, at *5 (N.D. Fla. July 27, 2010), *aff'd*, 441 F. App'x 748 (11th Cir. 2011) (citing to Bertine, 479 U.S. at 371-72, and South Dakota v. Opperman, 428 U.S. 364, 369 (1976).

Here, no evidence has been presented suggesting this search was based on a suspicion rather than policy. The undisputed evidence is that Plaintiff was the sole occupant of the vehicle and, upon his arrest, a tow truck ("rotation wrecker") was called to transport Plaintiff's vehicle. ECF No. 9-2 at 2. There being no other person on scene at the time of Plaintiff's arrest, calling for a two truck was reasonable. There is no evidence that Defendant Payne was not operating in compliance with Sheriff's Department policies, no suggestion that Defendant Payne lacked authority to impound the vehicle, and Plaintiff has not challenged the

reasonableness of the inventory search procedure. Plaintiff's Fourth Amendment rights were not violated by the search of his vehicle.

Defendant Payne has shown that there is no genuine dispute of material fact to any of the three claims raised in this case. The evidence reveals that Plaintiff's Fourth Amendment rights were not violated and, thus, summary judgment should be granted in Defendant's favor.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that the Defendant's motion for summary judgment, ECF No. 10, be **GRANTED** and judgment entered in his favor on all claims.

**IN CHAMBERS** at Tallahassee, Florida, on May 3, 2021.

S/ Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**